# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GLENNA LOWRY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV00311 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Glenna Lowry has worked as a personnel clerk, receptionist, switchboard operator and customer service representative. (Tr. 58). In 2003 she sustained a back injury during a motor vehicle accident. (Tr. 111-19). Her back pain along with depression led her to file an application for Disability Insurance Benefits (DIB) with the Social Security Administration asserting that she was under a "disability" within the meaning of the Social Security Act. She claimed in her DIB application a disability onset date of December 4, 2003. (Tr. 44).

After initial administrative denials, her DIB application – along with medical

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

records and other documents – proceeded to a hearing before Administrative Law Judge (ALJ) Thaddeus J. Armstead, Sr.  The ALJ issued a written decision concluding that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act.  (Tr. 20-22).

The ALJ's non-disability determination and resulting denial of Plaintiff's DIB application became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), the Plaintiff's Reply (Doc. # 14), the administrative record, and the record as a whole.  Plaintiff seeks an Order reversing the ALJ's decision and remanding for an award of benefits or, at a minimum, an Order remanding this case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.     ADDITIONAL BACKGROUND

### A.     Plaintiff And The ALJ's Hearing

Plaintiff's age (fifty-one) on the date of the ALJ's decision placed her in the category of a "person closely approaching advanced age" for purposes of resolving her DIB application.  *See* 20 C.F.R. §404.1563(d).

Plaintiff testified during at the ALJ's hearing that she suffers from low back pain caused by a car accident.  (Tr. 288-98).  Her low back pain radiates into her legs.  (Tr.

294). She described the pain as a constant dull, aching pain "like if you would have a toothache." (Tr. 292). Plaintiff estimated that most of the time her back and leg pain level is at least 7 or 8 on a ten-point pain scale (0 equaling noticeable pain; 10 being serious enough pain to need hospitalization). (Tr. 295). Changes in the weather make her pain worse. (Tr. 295). At the time of the ALJ's hearing, her treatment consisted of pain medication (Oxycontin and Vicodin). (Tr. 291, 300).

      Plaintiff testified that she is most comfortable sitting in a recliner or lying down. (Tr. 293). She constantly changes position when sitting, and she can only stand for about five minutes. (Tr. 292).

      Plaintiff also suffers from depression. (Tr. 297). She has daily crying spells and experiences fatigue due to the depression. (Tr. 299, 302). She stated there are some days where she does not get out of bed. (Tr. 297, 299).

      Plaintiff lives with her husband and mother. (Tr. 287). During the day she typically watches television while sitting in a recliner. She testified, "In the recliner I'm constantly changing position." (Tr. 293). After about 15 minutes the pain requires her to change positions. (Tr. 294). She takes naps during the day as necessary and some days she sleeps all day due to depression. (Tr. 267-97). Before the car accident, Plaintiff did her own housekeeping but after the accident, she did very little housekeeping. She would try to vacuum or rinse a few dishes and put them in the dishwasher. (Tr. 298). She does not do the laundry because it is in the basement and she does not go up or down the basement stairs. Her mother performs all the household chores. *Id*.

3

## B. Medical Source Opinions

Plaintiff relies on the opinions of her long-term treating physician, Dr. Hunter, who provided his opinions in a form and by answering interrogatories in August 2006. (Tr. 273-79). Dr. Hunter opined that Plaintiff could sit for 1 hour, stand ½ hour, and walk for 25 minutes. (Tr. 273-79). Plaintiff could sit, stand, and walk in combination for 2 hours per day and could not sustain these activities on a full-time basis. (Tr. 273). According to Dr. Hunter, Plaintiff could never lift or carry 10, 20, or 50 pounds, could not perform sedentary work, and would require complete freedom to rest frequently without restrictions during a work day. (Tr. 273-76).

Dr. Hunter diagnosed Plaintiff with spinal arthritis and L4-L5 bulging disc causing severe pain in the lumbar region with decreased range of motion, tenderness and spasm in C5-S1. (Tr. 277). Dr. Hunter based these diagnoses on a MRI performed on June 22, 2006 indicated "multilevel disc ... disease with facet arthropathy." (Tr. 277). Dr. Hunter also diagnosed lumbar radiculopathy, hyperthyroidism, restless leg syndrome, morbid obesity, hyperlipedmia, anxiety/depression, and chronic fatigue. *Id*. Dr. Hunter further stated that Plaintiff was unable to work 8 hours per day/40 hours per week because "the back/bulging disc, lumbar radiculopathy causes decreased ROM [range of motion], severe pain requires large doses of narcotics to control pain." (Tr. 278). Dr. Hunter noted that he treated Plaintiff with prescription medication (Oxycontin) and that pain management (epidural injections and physical therapy) had resulted in "no change." *Id*.

Plaintiff points out that Dr. Griffith interpreted an MRI of her lumbar spine in

4

January 2004. Dr. Griffith's report stated, "There is combination hard/soft disc protrusion centrally abutting the S1 nerve root bilaterally. There is no significant displacement. Neural foramina are present.... Mild facet joint hypertrophy is evident." (Tr. 120-21). Dr. Griffith's diagnostic impressions included, "1. Degenerative disc disease at L5-S1 with central disc protrusions.... There is a small extruded disc fragment suspected inferior to the disc space at L4-5 in a left paracentral distribution. 2. Left paracentral disc protrusion at L3-4 with mild resultant central canal stenosis." (Tr. 121).

Plaintiff saw a neurosurgeon, Dr. Moncrief, on February 26, 2004, who examined her and reviewed her January 2004 MRI. (Tr. 124-25). Dr. Moncrief wrote, "MRI of the lumbar spine... on 1/28/04 shows a bulging disc at L4-5. There is no impingement of the L5 nerve root, however, bilaterally. The bulge is somewhat more to the left than the right. There is no evidence of stenosis in the lumbar spine as well." (Tr. 125). Dr. Moncrief recommended, "I feel the patient's diffuse symptoms could be treated best with conservative therapy, to begin with physical therapy.... If she does not respond to physical therapy, therapeutic injections ... may be considered...." (Tr. 125).

Plaintiff also relies on the records of Dr. Lichota, her treating pain specialist, Dr. Lichota, and her treating chiropractor, Kevin LeHane. (Doc. #8 at 3)(citing Tr. 145-148, 149, 206-209, 202-203, 211-234).

The Commissioner relies on Dr. Moncrief's report. The Commissioner also notes that the pain management specialist, Dr. Lichota, who treated Plaintiff for over a year, did not opine that Plaintiff was unable to work.

5

The Commissioner further relies on the opinion of Dr. Klyop, a record-reviewing physician for the Ohio Bureau of Disability Determinations.  Dr. Klyop reviewed the record in April 2004 and concluded Plaintiff could perform a range of light exertional work.  (Tr. 126-30).

### III.  ADMINISTRATIVE REVIEW

#### A.  **Defining A "Disability" And The Sequential Evaluation**

The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).[2]

Social Security Regulations require ALJs to resolve whether a claimant is under a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?

---

[2] Other DIB eligibility requirements are not at issue in this case.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

>    3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
>    4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
>    5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.     The ALJ's Decision

In the present case the ALJ found at Step 2 that Plaintiff had severe impairments of "vertebrogenic disorder with lower extremity radiculopathy." (Tr. 20).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal an impairment in the Listings. *Id*.

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to perform a limited range of sedentary work[3] with certain limitations. The ALJ explained that Plaintiff's "impairments result in the following additional restrictions: the opportunity to sit or stand at will, with the ability to adjust the seating position by shifting or moving in place; no constant walking; occasional climbing of ramps/stairs; no climbing ladders, ropes, or scaffolds; occasional crouching and stooping; no kneeling; no

---

[3] The Regulations define sedentary work as involving the ability to lift "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20 C.F.R. §404.1567(a).

7

concentrated exposure to cold; and no use of foot pedals, leg controls, or similar controls involving the lower extremities." (Tr. 21).

This assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible to receive DIB. (Tr. 20-22).

## IV.   JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...*" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing the administrative record for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be not upheld even when substantial evidence supports the ALJ's findings. *See id*. A decision will not be upheld, for example, where the ALJ failed to follow apply the standards mandated by Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See id*.

## V.   DISCUSSION

Plaintiff contends that the ALJ erred by not giving appropriate consideration to the functional effects of the Plaintiff's morbid obesity, either alone or in combination with her other impairments pursuant to 20 CFR Appendix 1, Subpart P, Regulations No. 4 at Listing 1.00Q, and SSR 02-01p. Plaintiff further contends that the ALJ erred by rejecting the opinions of Dr. Hunter, her treating primary care physician, and her treating pain specialist, Dr. Lichota.

The Commissioner contends, "While the ALJ might not have explicitly discussed Plaintiff's obesity, it is significant that Plaintiff has failed to identify any additional limitations she feels resulted from her alleged obesity that the ALJ did not already adequately accommodate in his residual functional capacity finding. Importantly, the ALJ found Plaintiff was able to perform an appropriately tailored range of sedentary

9

work, the least exertional level of work.... Plaintiff has failed to point to any additional functional restrictions she believes resulted from her obesity." (Doc. #10 at 8-9).

The Commissioner further argues, "the ALJ was not required to give controlling weight, or even significant weight, to Dr. Hunter's opinion..., because it was not supported by objective medical evidence and was inconsistent with other substantial record evidence." (Doc. #10 at 9)(citing Tr. 18; 20 C.F.R. §404.1527(d)(2); Social Sec. Ruling 96-2p).

The ALJ's decision does not mention Plaintiff's morbid obesity. *See* Tr. 14-22. The ALJ did not consider Plaintiff's morbid obesity at Step 2 – when identifying her severe impairments – or at Step 3 – when determining whether the combination of her severe impairments meets or equals an impairment in the Listings – or at Step 4 – when assessing her Residual Functional Capacity. *See* Tr. 14-22.

Although the Commissioner's Regulations no longer contain a separate Listing for obesity, *see Combs v. Commissioner of Social Security*, 459 F.3d 640, 643-44 (6th Cir. 2006), the Listings contain the following mandate: "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, <u>adjudicator's must consider any additional and cumulative effects of obesity</u>." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1. The Regulations, moreover, "require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether any

such impairment, if considered separately, would be of sufficient severity.'" *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)(discussing and quoting in part 20 C.F.R. §404.1523).

Social Security Ruling 02-01p, 2000 WL 628049, reinforces Regulation's mandate regarding obesity as follows: Step 2 – "we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe...," *id*. at *4; Step 3 – "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record...," *id*. at *5; Step 4 – "The combined effects of obesity with other impairments may be greater than might be expected without obesity.... As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitation...," *id*. at *6-7.

Because the ALJ did not assess Plaintiff's morbid obesity at Steps 2, 3, and 4 of the sequential evaluation, his decision failed to comply with a mandatory procedural requirement set forth in the Commissioner's Regulations. *See* Listing 1.00Q, 20 C.F.R. Part 404, Subpart P, Appendix 1; *see also Clifford*, 227 F.3d at 873 ("The ALJ, rather than blind himself to this condition (and other relevant evidence), should have considered the weight issue with the aggregate effect of her other impairments."); Social Sec. Ruling 02-01p, 2000 WL 628049.

The Commissioner's contention that Plaintiff has not identified a specific

11

limitation imposed on her by obesity – a limitation the ALJ erred by not incorporating into his RFC finding – is a red herring.  Plaintiff essentially asserts that morbid obesity combined with her other impairments preclude her from performing any sedentary work and that the ALJ erred by finding she could perform a limited range of sedentary work.  Given this, Plaintiff does not need to identify an additional specific limitation (the red herring) the ALJ should have included in his assessment of her Residual Functional Capacity, since she contends that no specific functional limitation would accurately reflect her inability to perform any sedentary work.

As to the opinions of Plaintiff's treating physician, Dr. Hunter, the Regulations required the ALJ to determine whether controlling weight should be placed on Dr. Hunter's opinions under the treating physician rule.  *See Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §404.1527(d)(2).  The treating physician rule requires an ALJ to place controlling weight on a treating physician's opinion only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

The Regulations further mandate, "We will always give good reasons for in our notice of determination or decision for the weight we give you treating source's opinion." 20 C.F.R. §416.927(d)(2).

The ALJ rejected Dr. Hunter's opinion because "his conclusions are not supported by the objective medical evidence of record, but rather appear to be wholly based on an uncritical acceptance of the claimant's subjective complaints." (Tr. 18). This was not legal error since supporting objective medical evidence must exist before controlling weight can be placed on a treating physician's opinion under the treating physician rule. *See* 20 C.F.R. §404.1527(d)(2); *see also Wilson*, 378 F.3d at 544

However, the ALJ erred as a matter of law by not continuing to weigh Dr. Hunter's opinions under any remaining factor set forth in the Regulations. "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*,486 F.3d at 242. The ALJ's failure to mention or apply any remaining regulatory factor – supportability, consistency, specialization, *see* 20 C.F.R. §404.1527(d)(3)-(5) – beyond a factor applicable to determining whether controlling weight should be placed on Dr. Hunter's opinions leaves the ALJ's decision void of a good explanation for rejecting this treating physician's opinion. *See Wilson*, 378 F.3d at 544-45 (ALJ's summary

13

dismissal of the plaintiff's treating physician's opinion failed to meet the "good reasons" requirements of the Regulations).

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478 F.3d at 747-49, an issue neither party specifically addresses. The Commissioner, finding no error in the ALJ's decision, argues that Dr. Hunter's opinions were not supported by objective medical evidence and were inconsistent with other record evidence. The harmless-error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's error. *See Bowen*, 478 F.3d at 747-48; *see also Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* rationalizations can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh a treating medical source opinion as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appear to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is

appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

A review of Dr. Hunter's opinions does not reveal that they were wholly unsupported or otherwise "so patently deficient that the Commissioner could not possibly credit..." them. *Wilson*, 378 F.3d at 547. Dr. Hunter relied on objective medical evidence to support his opinion and he provided some explanation of his reasons for concluding that Plaintiff could not engage in certain work activities. *See* Tr. 273-79. For example, Dr. Hunter explained that Plaintiff's bulging disc in her back and lumbar radiculopathy caused her decreased range of motion and severe pain and required treatment with "large doses of narcotics to control pain." (Tr. 278). Given this and other information provided by Dr. Hunter, *see* Tr. 273-79, the ALJ's legal errors in reviewing this treating physician's opinion were not harmless.

Lastly, even accepting the Commissioner's contentions that the record contained substantial evidence supporting the ALJ's sequential evaluation, *see* Doc. #10 at 7-14, such evidence did not relieve the ALJ of his duty to evaluate the medical source opinions – particularly Dr. Hunter's opinions – under the factors required by the Regulations. "Even if supported by substantial evidence..., a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 476 (citing *Wilson*, 378 F.3d at 546-47)(other citation omitted).

Accordingly, Plaintiff's Statement of Errors is well taken.

**VI.     Remand Is Warranted**

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to re-evaluate Plaintiff's disability claims under the five-step sequential evaluation mandated by the Regulations and case law – including, but not limited, to (1) an evaluation of Plaintiff's morbid obesity, in combination with her other impairments as required by the Commissioner's Regulations and Ruling 02-01p; (2) an evaluation of the medical source opinions under the legal criteria mandated by the Commissioner's Regulations; and (3) a re-assessment of

Plaintiff's impairments at Steps 2, 3, 4 and, if necessary Step 5, of the sequential evaluation procedure.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Glenna Lowry was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

August 28, 2008

                                                                           s/Sharon L. Ovington
                                                                             Sharon L. Ovington
                                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).